UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, :
FOR RESIDENTIAL ASSET SECURITIES          :
CORPORATION, HOME EQUITY MORTGAGE         :
ASSET-BACKED PASS-THROUGH CERTIFICATES,   :
SERIES 2005-EMX1                          :
                                          :
                    Plaintiff,            :
                                          :
          v.                              :     C.A. No. 20-00227-MSM-LDA
                                          :
ARIEL TORRES                              :
                                          :
                    Defendant.            :

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff U.S. Bank National Association, as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1 ("U.S. Bank as Trustee" or "Plaintiff") moves for summary judgment against Defendant Ariel Torres ("Torres"). Plaintiff seeks to quiet title to real estate located at 40 Carter Street, Providence, Rhode Island ("Property") and to obtain a declaratory judgment pursuant to 28 U.S.C. § 2201 and *Fed. R. Civ. P.* 57.

At 9:06 a.m. on June 5, 2019, about three hours before a scheduled foreclosure sale, Torres (who has not paid the mortgage since November 1, 2010) recorded a document entitled "Notice of Defects Stated by Ariel Torres Regarding the Deficiencies in the Foreclosure Process for 40 Carter Street, Providence, Rhode Island 02907 and Notice that Suit will be Filed" ("Notice of Defects") in the land records for the City of Providence, Rhode Island ("Land Records"). However, not only did Torres not file any lawsuit to challenge the foreclosure sale, but the Notice of Defects also does not identify any meritorious reason that the foreclosure sale was

defective.   On June 5, 2019 at or about 12:00 p.m., U.S. Bank as Trustee conducted the foreclosure sale of the Property in strict compliance with all statutory and contractual requirements.   U.S. Bank as Trustee seeks an order quieting title to the Property in its favor and declaring the Notice of Defects void, of no effect on title to the Property, and stricken from the Land Records.

## FACTS

## I.      THE MORTGAGE ON THE PROPERTY

Ariel Torres became the owner of the real estate located at 40 Carter Street, Providence, Rhode Island (the "Property"), pursuant to a Warranty Deed from Paulino A. DeJesus and Maria T. DeJesus to him, dated November 27, 2004 and recorded on December 20, 2004, in the Land Evidence Records for the City of Providence ("Land Records") in Book 6994 at Page 350.  SOF at ¶ 1.

On December 17, 2004, Mr. Torres executed a mortgage (the "Mortgage") to secure the repayment of a $199,920.00 loan against the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee as nominee for Mortgage Lenders Network USA, Inc. DBA Lenders Network ("Lender") and Lender's successors and assigns which was recorded with the Land Records on December 20, 2004 in Book 6995 at Page 0001.  SOF at ¶ 2. A true and accurate copy of said Mortgage is attached hereto as **Exhibit A**.  *Id.*  Paragraph 15 of the Mortgage states, in relevant part, as follows:

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.… The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.

Paragraph 22 of the Mortgage states as follows:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the notice required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

On May 18, 2011, MERS assigned the Mortgage to U.S. Bank National Association, as Trustee for Residential Asset Securities Corp 2005-EMX1 by an assignment ("Assignment") recorded with the Land Records on August 2, 2011, in Book 10050 at Page 96. SOF at ¶ 3. A true and accurate copy of the Assignment is attached hereto as **Exhibit B**. *Id.*

There is no dispute that U.S. Bank National Association actually exists, as it is a federally-chartered national banking association. SOF at ¶ 4. There is also no dispute that there

is a trust known as RASC Series 2005-EMX1 Trust for which Residential Asset Securities Corporation was the depositor and U.S. Bank National Association is the trustee. SOF at ¶¶ 5-7. The securities issued through the RASC Series 2005-EMX1 Trust are titled "Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1."   SOF at ¶ 8. Distributions made through the RASC Series 2005-EMX1 Trust are made to the holders of the Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1.  SOF at ¶ 9.

## II.   **THE DEFAULT AND REQUIRED NOTICES**

Mr. Torres defaulted on the Mortgage by failing to make the payment due on or about November 1, 2010, and all subsequent payments.  SOF at ¶ 10.  Because Mr. Torres defaulted on the Mortgage before May 16, 2013, the holder of the Mortgage was exempt from the requirements of *R.I. Gen. Laws* § 34-27-3.2.  SOF at ¶ 11.

On May 8, 2018, Wells Fargo Home Mortgage, agent for the holder of the mortgage, mailed a notice of default ("Notice of Default") by first class mail to Torres at the Property address pursuant to paragraph 22 of the Mortgage.  SOF at ¶ 12.  A true and accurate copy of the Notice of Default is attached as **Exhibit C-1**.  *Id.*  The Notice of Default specified (a) "that [the] loan is in default for failure to make payments due; (b) that "[t]o cure the default you must pay the total delinquency against your account, which as of today's date is … $169,497.30;"[1] (c) that Torres "must pay this amount on or before June 12, 2018 (which is more than 30 days from May 8, 2018); and (d) "[u]nless the payments on your loan can be brought current by June 12, 2018, we may accelerate the sums secured by your security instrument and end your ownership of the property through sale of the property."  **Exhibit C-1** at p. 3.  Additionally, the Notice of Default

---

[1] This amount consisted of $159,433.99 in past due payments, $1,411.08 in late charges, and other fees of $8,652.23.  *See* **Exhibit C-1** at p. 3.

specified "[y]ou have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration …" and "[y]ou have the right to bring a court action to assert the non-existence of a default or any other defense you may have to the acceleration and sale." *Id.* Torres did not cure the default on or before June 12, 2018. SOF at ¶ 13.

On December 3, 2018, Bendett & McHugh, as attorney for U.S. Bank National Association, as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1, sent a notice of counseling ("Notice of Counseling") to Torres by certified mail in compliance with *R.I. Gen. Laws* § 34-27-3.1. SOF at ¶ 14. A true and accurate copy of the Notice of Counseling is attached as **Exhibit D-1**. *Id.* According to the certified mail receipt for tracking number 71901364740000505794, which Torres attached as Exhibit 8 to his Answer, the U.S. Postal Service left a notice at the Property concerning the Notice of Counseling on December 10, 2018, but, because it was unclaimed, the Notice of Counseling was being returned to sender beginning January 18, 2019. SOF ¶ 15.

On April 9, 2019, Bendett & McHugh, as attorney for the U.S. Bank National Association, as Trustee, for Residential Asset Securities Corp, 2005-EMX1, mailed a notice ("Notice of Intent to Foreclose") by first class and certified mail, return receipt requested, pursuant to *R.I. Gen. Laws* § 34-27-4, stating its intention to foreclose by sale under the power of sale contained in the Mortgage on June 5, 2019. SOF ¶ 16. A true and accurate copy of the Notice of Intent to Foreclose is attached as Exhibit A to the Foreclosure Deed (**Exhibit E**). *Id.* Notices of the foreclosure sale were published on May 13, May 20, and May 27, 2019, in the Providence Journal, in compliance with *R.I. Gen. Laws* §§ 34-11-22 and 34-27-4. SOF at ¶ 17.

### III.   **MR. TORRES' NOTICE OF DEFECTS**

On June 5, 2019, Mr. Torres executed a document titled "Notice of Defects Stated by Ariel Torres Regarding the Deficiencies in the Foreclosure Process for 40 Carter Street, Providence, Rhode Island 02907 and Notice that Suit will be Filed" (hereinafter referred to "Notice of Defects") and recorded it on June 5, 2019, at 9:06 a.m., with the Land Records in Book 12376 at Page 168. SOF at ¶ 18. A true and accurate copy of said Notice of Defects is attached hereto as **Exhibit F**. The Notice of Defects asserts that the foreclosure sale was invalid or defective for reasons stated therein, including the following:

- There is no trust with the name "Residential Asset Securities Corp. 2005-EMX1." *Id.* at ¶ 3;
- "U.S. Bank is not the trustee for Residential Asset Securities Corp. 2005-EMX1." *Id.* at ¶ 4;
- A trust named RASC Series 2005-EMX1 does exist, but was never assigned the Mortgage. *Id.* at ¶ 5;
- The entity that "seeks to foreclose … does not exist and any purported assignment to it is void." *Id.* at ¶ 6;
- Mr. Torres claims he "never was mailed nor received" a notice of default pursuant to Paragraph 22 of the Mortgage. *Id.* at ¶¶ 7-10;
- Paragraph 22 also requires a separate acceleration notice after the notice of default, but Mr. Torres was not provided a separate notice of acceleration. *Id.* at ¶¶ 11-12;
- The Notice of Default did not include the following language:
     If the default is not cured on or before the date specified in the notice, Lender, at its option may require immediate payment of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies provided in this Section 22.
  *Id.* at ¶ 13.
- The Notice of Default did not include "a specific and accurate amount which had to be cured on a particular date." *Id.* at ¶ 15.
- Mr. Torres was not advised that he "had an unqualified right to reinstate after acceleration and that said right was limited to no later than 5 days before the sale." *Id.* at ¶ 16.
- Mr. Torres was not advised that he had "the right to bring a Court action to assert the nonexistence of a default or any other defense to acceleration and sale." *Id.* at ¶ 17.
- Mr. Torres was not provided a "Notice of Conciliation pursuant to Providence City Ordinance 12-213 through 12-320." *Id.* at ¶ 18.

- Mr. Torres was not provided a "Notice of Foreclosure Counseling pursuant to R.I.G.L. 34-27-3.1 at least 45 days prior to [the Notice of Intent to Foreclose] being mailed." *Id.* at ¶ 19.

For these reasons, Mr. Torres argues in the Notice of Defects that "any foreclosure sale will be void." *Id.* at ¶ 20. He states that the Notice of Defects provides "notice to all persons that [Mr. Torres] will file a Court Action against any person or entity which claims to purchase my property at this purported sale." *Id.* at ¶ 20. Mr. Torres also states his intention to file a lawsuit against US Bank and Wells Fargo Bank, N.A., the loan servicer, to set aside any sale. *Id.*

## IV.   THE FORECLOSURE SALE

On June 5, 2019, at about 12:00 p.m., U.S. Bank, National Association, as Trustee for Residential Asset Securities Corp 2005-EMX1 foreclosed the Mortgage by exercising the statutory power of sale and conveyed the Property to U.S. Bank as Trustee by a Foreclosure Deed Under Power of Sale in Mortgage ("Foreclosure Deed") dated July 1, 2019, which was recorded with the Land Records on January 8, 2020, in Book 12603 at Page 239.[2] SOF at ¶ 20. A certified copy of said Foreclosure Deed is attached hereto as **Exhibit E**. *Id.*

## V.   PRIOR FORECLOSURE ACTION

U.S. Bank as Trustee previously conducted a foreclosure sale of the Property on January 6, 2012, and recorded a foreclosure deed on May 30, 2012. Answer at Exhibit 7. On January 2, 2018, Marinosci Law Group, P.C. ("Marinosci") filed an Affidavit of Ineffective Foreclosure stating that the foreclosure sale that occurred on January 6, 2012, and the corresponding

---

[2] In his Answer, Torres does not deny that a foreclosure sale of the Property occurred or that the Foreclosure Deed was recorded. Instead, he merely alleges that no such entity as the grantor or the grantee exist. However, he does admit that U.S. Bank National Association exists. As will be discussed below, the existence of the trustee is sufficient to make the conveyance legally valid without regard to the identity of the trust or beneficiaries thereof. Notably, Torres also admits the existence of a similarly named trust as referred to for both the grantor and grantee of the Foreclosure Deed.

foreclosure deed recorded on May 30, 2012, were void and the deed of no force and effect because US Bank National Association as Trustee for RASC 2005-EMX1 was not the mortgagee of record on May 9, 2011, when Marinosci mailed a "Notice of Intent to Foreclosure Mortgage" on behalf of US Bank National Association as Trustee for RASC 2005-EMX1.  Answer at Exhibit 7.

## VI.   <u>TORRES' AFFIRMATIVE DEFENSES</u>

With his Answer, Torres filed seventeen affirmative defenses ("Affirmative Defenses"), labeled A through P, plus an unnumbered Affirmative Defense listed before A.  These Affirmative Defenses are listed as follows:

- "Plaintiff's complaint fails to state a claim upon which relief may be granted" without explanation.  *See* Answer at 3.

A.  Torres "was not mailed an acceleration notice pursuant to the terms of paragraph 19 and 22 of the mortgage and paragraph 11 of the promissory note." *Id.*

B.  Torres was not provided a notice of counseling as required by *R.I. Gen. Laws* § 34-27-3.1, because the tracking history for the certified mail receipt numbered 71901364740000505794 (attached as Exhibit 8 to the Answer) shows a notice was left on December 10, 2018 and the Notice of Counseling was returned as "unclaimed." *Id.* at 4.

C.  The Notice of Counseling did not indicate that U.S. Bank as Trustee was the mortgagee, due to a minor difference in the name stated on the Assignment and on the Notice of Counseling. *Id.*

D.  This matter is barred by judicial estoppel because U.S. Bank as Trustee filed seven prior eviction actions against Torres and others in R.I. District Court. *Id.* at 4-6.

E.  The Complaint is barred by estoppel because "Martina Plummer of the law firm of Bendett & McHugh" executed an affidavit stating that a foreclosure that U.S. Bank as Trustee attempted in 2012 was ineffective. *Id.* at 6; *see also* Exhibit 7 to the Answer.

F.  Torres was not served in this action. *Id.* at 7.

G.  Plaintiff cannot enforce the Note because it was not endorsed and was lost. *Id.*

H.  Plaintiff was not assigned the Mortgage or transferred the Note. *Id.*

I.  Any alleged assignment of the Mortgage was void. *Id.*

J.   The Notice of Default did not strictly comply with the terms of the Mortgage and Note. *Id.*

K.   The Note was not accelerated.  *Id.*

L.   The Notice of Intent to Foreclose was not mailed on behalf of the named mortgagee.  *Id.*

M.   Plaintiff lacks standing to file this Complaint.  *Id.*

N.   Plaintiff is not the real party in interest.  *Id.*

O.   Plaintiff did not comply with the "City of Providence Conciliation Conference ordinance." *Id.*

P.   "Defendant reserves the right to assert additional defenses as may be determined after discovery." *Id.*

## STANDARD OF LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a).  An issue of fact is only "genuine" if it "may reasonably be resolved in favor of either party." *York v. Day Transfer Co.*, 525 F. Supp. 2d 289, 294 (D.R.I. 2007).  A fact is "material" only "when it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets."  *Id.*

The moving party bears the initial responsibility of informing the court "of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden by demonstrating an absence of evidence to support the nonmoving party's case.  *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir. 2002).  The burden then shifts to the nonmovant, who, to avoid summary judgment, must demonstrate by competent evidence the existence of issues of fact that are both genuine and material to its claim. *United States v. Citizens Bank*, 50 F. Supp. 2d 107, 109 (D.R.I. 1999).  For each issue, the nonmoving party "must present definite, competent evidence to rebut the

motion." *United States v. One Parcel*, 960 F.2d 200, 204 (1st Cir. 1992).  Failure to satisfy that burden compels the Court to enter summary judgment on the moving party's behalf.  *Id.*

**ARGUMENT**

U.S. Bank as Trustee conducted a foreclosure sale in strict compliance with the terms of the Mortgage, § 34-27-3.1, and § 34-27-4.  Torres, who admittedly has not paid his mortgage in ten years, claims that the foreclosure sale was invalid because the name of the trust was allegedly not spelled correctly on an assignment, because a prior foreclosure sale was determined to be invalid, and because U.S. Bank as Trustee filed prior eviction actions in state district court.

None of these squabbles affect the validity of the foreclosure sale. Defendant cannot establish a genuine issue as to any material fact, and Plaintiff is entitled to judgment as a matter of law.

**I.      PLAINTIFF IS ENTITLED TO A DECLARATION THAT THE FORECLOSURE SALE WAS VALID**

Plaintiff, the holder of the Mortgage, properly conducted a foreclosure sale on June 5, 2019, after sending the Notice of Default, the Notice of Counseling, and the Notice of Intent to Foreclose in strict compliance with all statutory and contractual requirements.

**A.      The Plaintiff Exists.**

Torres' Answer and the Notice of Defects assert that the trust identified in the Assignment, the Notice of Counseling, the Notice of Intent to Foreclose, and the Foreclosure Deed do not exist.  See Answer at ¶ 1 ("Denied that there is such a Trust …"); Notice of Defects at ¶ 3 ("there is no trust with this name").

Torres' argument ignores that under Rhode Island law, a trustee, not the trust, holds legal title to the trust property.  "It is an elementary proposition of law that a trust is created when legal title to property is held by one person for the benefit of another." *Lux v. Lux*, 109 R.I. 592,

10

596, 288 A.2d 701, 704 (1972), *citing Gooding v. Broadway Baptist Church*, 46 R.I. 106, 125 A.

211 (1924), Bogert, *Trust & Trustees* § 1 (2d ed. 1965); 1 Scott, *Trusts* § 2.3 (3d ed. 1967).

A Rhode Island statute specifically addresses the situation where a mortgage or other

interest in real estate is held by a trust without providing all or accurate information in the

instrument.  Rhode Island General Laws § 34-11-37 states the following:

> The word "trustee" or the words "as trustee" or words of similar
> meaning, following the name of the grantee of real estate or any
> interest therein conveyed, transferred or assigned by an instrument
> duly executed and recorded, wherein the instrument fails to set
> forth the terms of the trust, or to specify a recorded instrument
> which sets forth its terms and the place in the public records where
> the instrument is recorded, shall not affect the right of such grantee
> to sell or otherwise dispose of the real estate or interest therein in
> the same manner as if the word "trustee" or the words "as trustee"
> had not been used in the instrument, and any person to whom the
> real estate or interest therein has been transferred by the grantee
> shall not be liable for the claim of any undisclosed beneficiary or
> for the application of any money which may have been paid by the
> person therefor.

*R.I. Gen. Laws* § 34-11-37.[3]

Here, U.S. Bank National Association held title to the Mortgage (by way of the

Assignment)  SOF at ¶ 3.  Counsel for U.S. Bank National Association sent the Notice of

Counseling and Notice of Intent to Foreclose.  SOF at ¶¶ 14, 16.  U.S. Bank National

Association conducted the foreclosure sale of the Property pursuant to the power of sale in the

Mortgage that it held, and the Foreclosure Deed conveyed the Property to U.S. Bank National

---

[3] Rhode Island Title Standards 7.11 interprets this statute as follows: "The provisions of R.I.G.L.
§ 34-11-37, entitled Indefinite references to 'trustee', shall be deemed to apply to any deeds
executed by a financial institution which held title 'as trustee' to a foreclosed mortgage, whether
or not the foreclosed mortgage or subsequent deeds executed by the financial institution refers to
a specific trust or agreement under which the financial institution purports to act. Accordingly,
the absence of a recorded Affidavit or Memorandum of Trust meeting the requirements of
R.I.G.L. § 34-4-27 shall not render the title to the property conveyed by the financial institution
unmarketable."

83607820v.3

Association.  SOF at ¶ 20.  Torres admits that U.S. Bank National Association exists.  SOF at ¶ 4, citing Answer at ¶ 2.  The words "as trustee" and whatever followed those words do not affect ownership, but rather describe the responsibilities that U.S. Bank National Association has over the Property toward the beneficiaries of the trust.  *Lux*, 109 R.I. at 596 ("The absence of such words as 'trust' or 'trustee' is immaterial where the requisite intent of the testator can be found.").  Moreover, under § 34-11-37, U.S. Bank National Association has complete authority to hold title to the Mortgage or the Property, to exercise the power of sale, and to convey the Property through the Foreclosure Deed.  Any variation of the name of the trust that follows the words "as trustee" are of no consequence.

The Rhode Island Supreme Court has repeatedly rejected challenges to conveyances (whether deeds or mortgages) based on alleged or actual errors in a party's name, including the very argument that Torres puts forth.  In *Pimentel v. Deutsche Bank Nat'l Trust Co.*, the mortgagor alleged that an assignment of mortgage was invalid because the mortgagee, Deutsche Bank as Trustee was "a nonexistent entity."  174 A.3d 740, 745 (R.I. 2017).  The *Pimentel* Court rejected that argument with little discussion, holding that "so long as Deutsche Bank as Trustee is the mortgagee, it can foreclose on Pimentel's property."  *Id.*  The *Pimentel* court held that Plaintiff "failed to provide any sufficient evidence beyond investigations that were conducted on the Internet to challenge the validity of the corrective assignment" that assigned the mortgage to Deutsche Bank as Trustee, and thus, despite arguing that Deutsche Bank as Trustee did not exist, failed to create any genuine issue of material fact.  *Id.*

Moreover, to the extent that the mortgage is held by a party with an incorrect name, Rhode Island law holds that the mortgagee, under whatever name, can foreclose as an agent for the holder of the note.  *Pimentel*, 174 A.3d at 745 ("so long as Deutsche Bank as Trustee is the

mortgagee, it can foreclose on Pimentel's property, regardless of whether it holds the note");
*Bucci v. Lehman Bros. Bank, FSB*, 68 A.3d 1069, 1089 (R.I. 2013) ("we see no reason why
MERS, as an agent of the owner of the note, cannot foreclose on behalf of that entity").

The argument that a foreclosure is invalid because the trust that holds the mortgage does
not exist has been rejected by every court known to have considered it.  *HSBC Bank USA, Nat'l
Ass'n for PHH 2007-1 v. Joseph*, No. FBTCV126029126S, 2017 WL 3671334, at *3 (Conn.
Super. Ct. July 17, 2017) (rejecting argument "that the beneficiary 'PHH–2007–1' of the plaintiff
trust 'does not exist' and the case should be dismissed because the plaintiff has not proved that it
does exist"); *U.S. Bank Nat'l Ass'n as Tr. v. Gagua*, 2020 IL App (1st) 190454, ¶¶ 35, 38, 42-43
(rejecting arguments that "the named Plaintiff does not exist" and "the trust does not exist"
because the actual named plaintiff was not the trust, but rather was "US Bank National
Association" (which does exist) which was acting in its capacity as a trustee); *U.S. Bank Nat'l
Ass'n v. Dumas*, 144 So. 3d 29, 37 (La. Ct. App. 2014), cert. denied, 147 So. 3d 1119 (2014)
(rejecting defense to judicial foreclosure that "no trust exists by that name" because it "places
undue emphasis on the precise name of the trust and incorrectly suggests that the trust is the
proper party to enforce an instrument that is payable to the trustee"); *Bank of New York Mellon v.
Zayed*, No. 108623, 2020 WL 4698959, at *8 (Ohio App. 8th Dist. Aug. 13, 2020) (mortgagors'
assertion that the trust was not listed in the EDGAR database of the Securities and Exchange
Commission ("SEC") did not provide any evidence that the trust did not exist); *Wells Fargo
Bank, Nat'l Ass'n as Tr. v. Kingman Holdings, LLC as Tr.*, No. 05-17-01240-CV, 2019 WL
244606, at *3 (Tex. App. Jan. 17, 2019) (rejecting argument that a trust does not exist based on
mortgagor's review of SEC's database because "even if the trust was required to submit filings

to the SEC, its failure to do so would suggest only that the trust was not in compliance with SEC regulations, not that it was not a bona fide legal entity"), review denied (Apr. 26, 2019).

The District of Massachusetts also rejected Torres' theory that a foreclosure sale is void because a mortgagee does not exist, where the mortgagor alleged that an assignment of mortgage and a notice of foreclose sale omitted three words from the name of the securitized mortgage trust.[4]   *Pinto v. HSBC Bank, N.A*., No. CIV.A. 12-11332-LTS, 2012 WL 6622493, at *1 (D. Mass. Dec. 18, 2012).   The *Pinto* Court held that the notice of foreclosure sale strictly complied with *Mass. Gen. Laws* ch. 244, § 14, stating, "The information contained in the Notice was in every respect accurate, with the exception of the omission of the three words identified by [the mortgagor] Pinto. This omission is not of significance in this context."   *Id.* at *3.   The Court reasoned that the variation in the name still referred to the same person as follows:

> The fact that Pinto identifies an additional three words which also correctly describe the trust, but which do not appear in the assignment, does not itself render the reference in the assignment incorrect. For example, an assignment to an individual referred to therein as "John Smith" would not be invalidated solely because a separate document existed referencing the middle name of that individual. There is here no question that the trust referenced in the assignment and the trust Pinto asserts holds the mortgage are one and the same, and that all of the language contained in the assignment was correct.

Similarly, here, what Mr. Torres argues to void a foreclosure of the Mortgage he has not paid in ten years is nothing more than the difference between "John Smith," "John E. Smith," and "John Edward Smith."  Specifically …

---

[4] The mortgagor argued that the correct name of the trust was "Nomura Asset Acceptance Corporation **Alternative Loan Trust** Series 2006-AR4" compared to "Nomura Asset Acceptance Corporation Mortgage Pass–Through Certificates Series 2006–AR4."

14

(1) "U.S. Bank, National Association, as Trustee for Residential Asset Securities Corp 2005-EMX1" (named on the Assignment, the Notice of Intent to Foreclose, and as grantor[5] in the Foreclosure Deed),

(2) "U.S. Bank, National Association, as Trustee for RASC 2005-EMX1" (what Mr. Torres argues is the proper name of the trust), and

(3) "U.S. Bank National Association, as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1" (named on the Notice of Counseling and as grantee in the Foreclosure Deed)

… are all the same person.  The minor variations in spelling do not affect the validity of the Assignment, the Notice of Intent to Foreclose, the Notice of Credit Counseling, or the Foreclosure Deed.

### B.      As Mortgagee, Plaintiff May Exercise the Power of Sale.

In his Affirmative Defenses, Torres argues that the Complaint should be denied because Plaintiff is not entitled to enforce the Note because it was lost (Affirmative Defense G), that Plaintiff was not assigned the Mortgage or transferred the Note (Affirmative Defense H), that any alleged assignment of the Mortgage was void (Affirmative Defense I), that Plaintiff lacks standing to file the Complaint (Affirmative Defense M), and that Plaintiff is not the real party in interest (Affirmative Defense N).   However, because Plaintiff was the mortgagee of the Mortgage, it had the authority to exercise the power of sale and has standing to prosecute this action.

The Rhode Island Supreme Court has repeatedly stated that "under Rhode Island case law, a mortgagee may foreclose even if it does not hold the note."  *Pimentel*, 174 A.3d at 745. "As [the R.I. Supreme Court has] repeatedly said in a long line of cases stemming from *Bucci v.*

---

[5] Technically, Torres is the grantor in the Foreclosure Deed.  *See Reynolds v. Hennessy*, 15 R.I. 215, 218, 2 A. 701, 703 (1886).  The mortgage acts as quasi-trustee for the mortgagor when exercising the power of sale.  *Manville Covering Co. v. Babcock*, 28 R.I. 496, 68 A. 421, 424 (1907).

*Lehman Brothers Bank, FSB*, [*supra*], a mortgagee need not hold the note in order to foreclose on a property." *Id., citing Leone v. Mortg. Elec. Registration Sys., Inc.,* 101 A.3d 869, 874 (R.I. 2014) and *Mruk v. Mortg. Elec. Registration Sys., Inc.*, 82 A.3d 527, 537 (R.I. 2013).

This Court has consistently followed the Rhode Island Supreme Court's holding that the mortgagee has authority to foreclose whether or not it owns or holds the note, rejecting the same arguments that the Plaintiff is making in the instant case. *See Sophin In v. Mortg. Elec. Registration Sys., Inc*., C.A. No. 11–330, 2015 WL 105775, at *2 (D.R.I. Jan. 7, 2015) (McConnell, J.) (argument that mortgagee lacked authority to foreclose because it was not the note-holder had "no basis in law"); *Era v. Morton Cmty. Bank*, 8 F. Supp. 3d 66, 74 (D.R.I. 2014) (finding authority to foreclose based on assignments of the mortgage, not on ownership of the note); *Clark v. Mortg. Elec. Registration Sys., Inc*., 7 F. Supp. 3d 169, 182 (D.R.I. 2014) ("MERS and its assigns can institute foreclosure even where the foreclosing entity does not hold an interest in the note").

Moreover, the Rhode Island Supreme Court and this Court have rejected challenges to mortgage assignments because third-parties are precluded from challenging the validity of a contract.  Agreeing with the First Circuit Court of Appeals, the R.I. Supreme Court limited the standing of a homeowner to challenge assignments to instances where the assignments are "invalid, ineffective, or void."  *Mruk*, 82 A.3d at 536 ("[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.")  (quoting *Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013)). "Specific to the mortgage context, a void mortgage assignment is one in which the putative assignor 'never properly held the mortgage

and, thus, had no interest to assign.'" *Wilson v. HSBC Mortg. Servs.*, 744 F.3d 1, 10 (1st Cir 2014) (quoting *Culhane*, 708 F.3d at 291).

Torres' assertion that the foreclosure sale was void because U.S. Bank as Trustee did not own or possess the Note, even if somehow substantiated by any evidence, fails to create any genuine issue of material fact because, as noted above, the R.I. Supreme Court has repeatedly held that a person need not possess the note to foreclose. It is sufficient that U.S. Bank as Trustee is the mortgagee of the Mortgage.

Here, U.S. Bank as Trustee was in fact the mortgagee prior to the foreclosure. On May 18, 2011, MERS assigned the Mortgage to U.S. Bank as Trustee by the Assignment, which it recorded with the Land Records on August 2, 2011, in Book 10050 at Page 96. SOF at ¶ 3, **Exhibit B**. Torres does not provide any evidence or plausible assertion that the Assignment was "invalid, ineffective, or void." Indeed, because Torres gave the Mortgage to MERS initially, he cannot assert that MERS "never properly held the mortgage and, thus, had no interest to assign." *Wilson*, 744 F.3d at 10.

Torres will likely argue that in *Note Capital Grp., Inc. v. Perretta*, 207 A.3d 998 (R.I. 2019), the R.I. Supreme Court overturned its "long line of cases" from *Bucci* to *Pimentel, sub silentio*, and required a mortgagee to possess the note. However, the *Perretta* case involved a complaint to seek personal liability on a lost note, and did not involve the exercise of the power of sale. The R.I. Supreme Court specifically noted that the plaintiff alleged that "the sum of $1,605,870.29 is due and owing … in connection with the [n]ote." *Perretta*, 207 A.3d at 1001 n.7. Thus, the plaintiff was not just seeking a foreclosure of the right of redemption to the subject property based on the mortgage; it was specifically seeking to enforce personal liability

on a lost note.[6]  Far from somehow overturning the *Bucci/Pimentel* "long line of cases," *sub silentio*, the *Perretta* Court actually affirmed its rationale, by explaining, "[t]he promissory note evidences the obligation of the borrower to repay the monies that have been lent, and the mortgage (or mortgage deed) acts as security for that debt." *Id.* at 1003, quoting *Bucci*, 68 A.3d at 1077.  After *Peretta*, this principal was again affirmed in *Woel v. Christiana Tr.*, 228 A.3d 339, 345 (R.I. 2020) ("the right to exercise the power of sale is derived from the mortgage contract itself"), citing *Bucci*, 68 A.3d at 1085.  Nothing in *Perretta* can be interpreted as requiring a mortgagee to possess a promissory note before exercising the power of sale found in the mortgage.

It is undisputable that U.S. Bank as Trustee was the assignee of the Mortgage pursuant to the Mortgage.  Therefore, U.S. Bank as Trustee had the right to exercise the power of sale on June 5, 2019.

### C.  The Notice of Default Strictly Complied with the Mortgage.

In his Affirmative Defense labeled J, Torres states, "The purported default notice did not strictly comply with the terms of the mortgage and the note."  Answer at 7.  Torres does not provide any specific reason why the Notice of Default does not strictly comply with the terms of the Mortgage.

Plaintiff's June 5, 2019 foreclosure was valid because it was based on a notice of default that strictly complied with paragraph 22 of the Mortgage, which states:

---

[6] The *Perretta* complaint contained two counts: count one, seeking liability on the lost note, and count two seeking a foreclosure of the mortgage.  See Complaint, *Note Capital Grp. v. Perretta*, PC-2014-5678 (Nov. 11, 2014) at ¶ 37 ("Defendants … are in default in the performance of the terms and conditions of the Note by reason of their failure to timely tender principal and interest payment as required by the terms of the Note.").  A claim for liability on a promissory note <u>does</u> require a plaintiff to prove ownership of the note and is worlds apart from the present claim to quiet title following an exercise of the power of sale found in a mortgage.

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

*See* **Exhibit A**.

On May 8, 2018, Wells Fargo Home Mortgage, the servicer of the Mortgage, sent Mr. Torres the Notice of Default that specified (a) "that [the] loan is in default for failure to make payments due; (b) that "[t]o cure the default you must pay the total delinquency against your account, which as of today's date is … $169,497.30;" (c) that Torres "must pay this amount on or before June 12, 2018 (which is more than 30 days from May 8, 2018); and (d) "[u]nless the payments on your loan can be brought current by June 12, 2018, we may accelerate the sums

19

secured by your security instrument and end your ownership of the property through sale of the property." *See* **Exhibit C-1**. Additionally, the Notice of Default specified "[y]ou have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration …" and "[y]ou have the right to bring a court action to assert the non-existence of a default or any other defense you may have to the acceleration and sale." *Id.* Thus, the Notice of Default specified all the information required by Paragraph 22 of the Mortgage.

Moreover, Wells Fargo mailed the Notice of Default to the Property by first class mail. SOF ¶ 12. This satisfied Paragraph 15 of the Mortgage, which deems notices to have "been given to Borrower when mailed by first class mail" to the Property address. There is also no dispute that Torres did not cure the default by June 12, 2018. SOF ¶ 13. Thus, Plaintiff strictly complied with Paragraph 22 of the Mortgage.

### D.   Plaintiff Was Not Required to Send a Notice of Acceleration.

Torres alleges that the Plaintiff was required to send a separate notice after Torres failed to cure the default by June 12, 2018, to state that it had accelerated the Mortgage. In his Affirmative Defense labeled A, Torres argues that he "was not mailed an acceleration notice pursuant to the terms of paragraph 19 and 22 of the mortgage and paragraph 11 of the promissory note." Answer at p. 3, ¶ A.

However, paragraph 22 states that "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument **without further demand** and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law." **Exhibit A** at ¶ 22 (emphasis added). Therefore, the mortgagee of the Mortgage, by the clear terms of the Mortgage, was not required to send any further notice after the Notice of Default,

such as a separate notice of acceleration, or otherwise, prior to exercising the statutory power of sale.

Paragraph 19 does not contradict the acceleration "without further demand" as allowed by Paragraph 22.  Paragraph 19 explains the conditions the Borrower must fulfill to reinstate the Mortgage after acceleration.  Paragraph 19 simply does not mention notice of any kind.

The terms of the Note do not apply because the exercise of the power of sale is a right found in the Mortgage, not the Note.  *Woel*, 228 A.3d at 345 ("the right to exercise the power of sale is derived from the mortgage contract itself"), citing *Bucci*, 68 A.3d at 1085; *Thurber v. Carpenter*, 18 R.I. 782, 784, 31 A. 5, 6 (1895).  While a creditor may pursue the additional rights under a promissory note, it is the mortgage that acts as security and includes the notices required to proceed with a foreclosure sale.  *Bucci,* 68 A.3d at 1077 ("The promissory note evidences the obligation of the borrower to repay the monies that have been lent, and the mortgage (or mortgage deed) acts as security for that debt").

Therefore, because Paragraph 22 allowed U.S. Bank as Trustee to accelerate the sums due "without further demand," a separate notice of acceleration was not required before the Notice of Intent to Foreclose.

**E.**   **Plaintiff Sent the Notice Of Counseling In Compliance With § 34-27-3.1.**

In addition to strictly complying with the Mortgage, Plaintiff complied with § 34-27-3.1 by sending the Notice of Counseling to Torres on December 3, 2018.

*Rhode Island General Laws* § 34-27-3.1(a)[7] requires a mortgagee to provide a notice of foreclosure counseling as follows:

---

[7] The R.I. General Assembly repealed § 34-27-3.1 on July 8, 2014, when making amendments to § 34-27-3.2. See 2014 Public Laws ch. 543, § 2.  That Public Law expired on July 1, 2018. *Id.* at § 3.  When the General Assembly re-enacted the amendments to §34-27-3.2 with a new sunset

> No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the mortgagee shall provide to an individual consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

*R.I. Gen. Laws* § 34-27-3.1(a).  This statute requires mortgagees to send the form that "shall be promulgated by the department of business regulation for use by mortgagees."  *R.I. Gen. Laws* § 34-27-3.1(b);   see also   R.I.   D.B.R.   Banking   Bulletin   2018-2,   available   at https://dbr.ri.gov/documents/news/banking/Banking_Bulletin_2018-2.pdf.   The statute further provides that the failure of a mortgagee to provide the required notice to the mortgagor "shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section." *R.I. Gen. Laws* § 34-27-3.1(c).  Finally, "the mortgagee shall include in the foreclosure deed an affidavit of compliance with this section."  *Id.*

This statute does not define "mortgagee."  However, the General Assembly has indicated that the term "mortgagee" should be construed liberally.  In a related foreclosure statute, "mortgagee" is defined as "the holder of a mortgage, or its agent or employee, including a mortgage servicer acting on behalf of a mortgagee."  *See R.I. Gen. Laws* § 34-27-3.2 (c)(8).

Here, Plaintiff fully complied with § 34-27-3.1.  On December 3, 2018, Bendett & McHugh, as agent for U.S. Bank as Trustee, sent the Notice of Counseling by certified mail to Mr. Torres in compliance with *R.I. Gen. Laws* § 34-27-3.1.  SOF ¶ 14; **Exhibit D**.  In the Foreclosure Deed, Plaintiff included an affidavit of compliance with § 34-27-3.1.  **Exhibit E**. Thus, the statute was satisfied.

---

date of July 1, 2023, it did not extend the sunset date of 2014 Public Laws ch. 543, § 2.  See 2018 Public Laws ch. 72 and ch. 73.  Thus, on July 1, 2018, § 34-27-3.1 became effective again.

Torres may argue that the Notice of Counseling did not comply with § 34-27-3.1 because it was sent on behalf of "U.S. Bank National Association, as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1," which deviates slightly from the name on the Assignment ("U.S. Bank, National Association, as Trustee for Residential Asset Securities Corp 2005-EMX1"). However, as explained above, the minor variation in the spelling of the name of the trust is immaterial under Rhode Island law. U.S. Bank National Association is the person that actually holds the mortgage and the variation after the words "as trustee" merely describe the relationship under which U.S. Bank National Association is acting. Both the Assignment and the Notice of Counseling correctly state that the mortgagee is U.S. Bank National Association.

Moreover, the minor variations in the name of the trust clearly fall well within the broad definition of mortgagee used in a related, neighboring statute, § 34-27-3.2. By including "the holder of a mortgage, or its agent or employee, including a mortgage servicer acting on behalf of a mortgagee," the General Assembly expressed an intention that the term "mortgagee" be defined broadly, including alternate spellings or typographical errors for the mortgagee. To the extent that the minor variations in the name of the trust as stated on the Assignment and the Notice of Counseling are deemed to have any significance whatsoever, the Notice of Counseling was sent by an agent for the mortgagee. Both Bendett & McHugh (who sent the notice) and "U.S. Bank National Association, as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2005-EMX1" were agents for the mortgagee stated on the Assignment.

Torres also may argue that Plaintiff did not comply with *R.I. Gen. Laws* § 34-27-3.1(a) because it requires the Notice of Counseling to be "provide[d] … by first class mail" and

Plaintiff, through its counsel, sent the notice to Torres by certified mail.  Torres ignores that certified mail actually is first class mail.  *See MTGLQ Inv'rs, L.P. v. Davis*, 270 So. 3d 392, 393 (Fla. Dist. Ct. App. 2019) (because certified mail is a type of first class mail, notice of default sent by certified mail was sent in compliance with paragraph 15 of the mortgage that required notices be sent by first class mail), *review denied sub nom. Davis v. MTGLQ Inv'rs, LP*, No. SC19-1020, 2019 WL 4127348 (Fla. Aug. 30, 2019), and *cert. denied*, 140 S. Ct. 1110, 206 L. Ed. 2d 181 (2020), *reh'g denied*, 140 S. Ct. 2706, 206 L. Ed. 2d 845 (2020); *Ocwen Loan Servicing, LLC v. Malish*, 109 N.E.3d 659, 668 (Ohio Ct. App. 2018) (same).  That Plaintiff's attorney added the additional postal services of certified mail and requesting a return receipt does not make the notice non-compliant with the statute.

Torres also may argue that because the Notice of Counseling was mailed on December 3, 2018, but not actually delivered, that it was not "provided" 45 days before mailing the Notice of Sale.[8]  However, Torres' argument is extremely self-serving.  He ignores that according to the return receipt, which he attached to his Answer at Exhibit 8, the U.S. Postal Service left notice that they were trying to deliver the Notice of Counseling to him.  The return receipt states:

> **December 10, 2018, 6:45 pm**
> Notice Left (No Authorized Recipient Available)
> PROVIDENCE, RI 02907

Torres, however, did not claim the letter.  The return receipt states:

> **January 18, 2019, 8:47 am**
> Unclaimed/Being Returned to Sender
> PROVIDENCE, RI 02907

---

[8] The Notice of Sale was mailed on April 9, 2019.  To comply with § 34-27-3.1, the Notice of Counseling had to be provided before Saturday, February 23, 2019, which is 45 days before April 9, 2019.

For its part, Plaintiff "provided" the Notice of Counseling to Torres; it is not Plaintiff's fault, and does not invalidate the foreclosure sale, that Torres refused to claim the Notice of Counseling. Therefore, Torres cannot legitimately dispute that Plaintiff complied with § 34-27-3.1.

### F.    Plaintiff Was Not Required to Participate in Pre-foreclosure Mediation.

The parties agree that because the date of default under the Mortgage was November 1, 2010, the mortgagee is exempt from complying with the mediation statute. SOF ¶¶ 10-11; *see R.I. Gen. Laws* § 34-27-3.2(o) ("The provisions of this section shall not apply if … (2) The date of default under the mortgage is on or before May 16, 2013.").

However, in Affirmative Defense O, Torres alleges that "Plaintiff did not comply with the City of Providence Conciliation Conference ordinance, which applies to any mortgagor not entitled to mediation under *R.I. Gen. Laws* § 34-27-3.2." Answer at p. 7 ¶ O. Torres does not state what effect a failure to comply with the conciliation conference ordinance would have or what remedy he is seeking, but because he pleads it as an affirmative defense, presumably he will argue that the June 5, 2019 foreclosure sale was ineffective or even void if he can prove noncompliance with the Providence ordinance.

However, as of July 10, 2018, the Providence ordinance related to a pre-foreclosure conciliation conference is not effective. Specifically, Section 13-23 of the Providence Code of Ordinances states, "(b) This article shall have no effect unless and until the provisions of G.L. 1956, § 34-27-3.2 are repealed or expire." As stated in footnote 7 above, the mediation statute is currently scheduled to expire on July 1, 2023. Therefore, the Providence ordinance is not currently effective and does not affect this foreclosure sale in any way.

Even if the ordinance were effective, failure to comply would not render the foreclosure sale void. Instead, according to that ordinance, the recorder of deeds is authorized to assess a penalty of five hundred dollars ($500.00) if the recorder "determines that the mortgagee has failed in any material respect to comply with the requirements and provisions of this article." *Id.* While this penalty does not abridge "[t]he rights of the homeowner to any redress afforded under the law," *Id.*, there is no statute or case stating that a foreclosure sale is void for failure to comply with the conciliation conference requirement of the Providence code of ordinances when it was effective.

Therefore, Plaintiff was not under any obligation to engage in any pre-foreclosure mediation.

**G.     Plaintiff Sent the Notice Of Intent To Foreclose and Advertised the Sale in Accordance With §§ 34-11-22 And 34-27-4.**

Under *R.I. Gen. Laws* §§ 34-11-22 and 34-27-4, a mortgagee may exercise the statutory power of sale "by first 'mailing written notice of the time and place of sale by certified mail, return receipt requested, to the mortgagor, at his or her or its last known address' and 'second, by publishing the same at least once each week for three (3) successive weeks in a public newspaper published daily in the city in which the mortgaged premises are situated.'" *McGovern v. Bank of Am., N.A.*, 91 A.3d 853, 859 (R.I. 2014).

Here, Plaintiff fully complied with §§ 34-11-22 and 34-27-4. On April 9, 2019, Plaintiff's attorney sent the Notice of Intent to Foreclose by first class and certified mail informing Torres that it would commence a foreclosure sale on June 5, 2019. SOF, ¶ 16; **Exhibit E**. The notice contains all information required by § 34-27-4, including the notice of the rights of servicemembers. *See* **Exhibit E**. Plaintiff's attorney caused notice of the foreclosure sale to be published on May 13, May 20, and May 27, 2019 in the Providence Journal, which is

83607820v.3

sufficiently in advance of June 5, 2019.  SOF, ¶ 17.  Thus, Plaintiff fully complied with the requirements of *R.I. Gen. Laws* §§ 34-11-22 and 34-27-4.

> **H.**     **Plaintiff Transferred The Property To Itself By The Foreclosure Deed.**

On June 5, 2019, at about 12:00 p.m. Plaintiff conducted a foreclosure sale and submitted the winning bid.  **Exhibit E**.  Plaintiff's agents prepared the Foreclosure Deed to memorialize the sale, including affidavits of notice and of compliance with the terms of the Mortgage.  **Exhibit E**.

Therefore, there is no genuine issue concerning any material fact.  Plaintiff holds the Mortgage.  Mr. Torres defaulted on the Mortgage.  Plaintiff strictly complied with all statutory and contractual requirements for the foreclosure, including the Notice of Default, Notice of Counseling, Notice of Intent to Foreclose, and publication of the Notice of Sale.  Plaintiff is therefore entitled to a declaration that the foreclosure sale was valid, that Plaintiff is the owner of the Property, and that Mr. Torres' Notice of Defects is of no effect on Plaintiff's title.

**II.**     **TORRES' NOTICE OF DEFECTS SHOULD BE STRICKEN**

In Count Two of the Complaint, Plaintiff seeks an order striking Torres' Notice of Defects from the Land Records.  As stated above, Plaintiff's foreclosure was legally valid, and none of the issues raised in the Notice of Defects have any significance or validity.  Moreover, the Notice of Defects should be stricken because it is an attempt to file a *lis pendens* without actually initiating a lawsuit.

Rhode Island permits a person to record in the land records a notice of a pending legal action, called a *lis pendens,* in accordance with *R.I. Gen. Laws* § 9-4-9.  That statute permits a plaintiff, after filing a "bill, petition, declaration, or other complaint … concerning the title to real estate" to record "notice of the filing" in the land records where the subject property is

located.  *R.I. Gen. Laws* § 9-4-9(a).  The notice of filing is required to "briefly state the names of all the parties, the court wherein filed, the date of filing, and the substance of the bill, petition, declaration or other complaint, rule, order, decree, or judgment, and a description of the real estate thereby affected."  *Id.*  The purpose of the *lis pendens* is "to warn any person subsequently dealing with the title to the land." *Id.*

The Notice of Defects is in the nature of a *lis pendens*, without complying with that statute.  It states the names of all the parties involved, including Torres, U.S. Bank as Trustee, and Plaintiff's foreclosure counsel Bendett & McHugh.  *See* Notice of Defects at ¶¶ 1-3.  The Notice of Defects describes the real estate affected.  *Id.* at ¶ 1.  It states the substance of Torres' dispute.  *Id.* at ¶¶ 3-20.  It warns any person subsequently dealing with title to the real estate.  *Id.* at ¶ 20.  The Notice of Defects even states Torres' intention to "file a Court Action" just like a *lis pendens* would.  *Id.*  However, Mr. Torres never filed any action.  Thus the Notice of Defects should be stricken from the Land Records for failure to comply with *R.I. Gen. Laws* § 9-4-9.

Mr. Torres may have been trying to file a document like an "Affidavit to Clarify Title" described in *Mass. Gen. Laws* ch. 183, § 5B.  Several mortgagors in Massachusetts have filed similar affidavits in Massachusetts' registries of deeds to assert that a foreclosure was invalid and to slander the title of the mortgagee without filing an action or having any good faith basis to do so.  Numerous cases have declared such affidavits to be ineffective.  *Deutsche Bank Nat'l Trust Co. v. Grandberry*, 388 F. Supp. 3d 65 (D. Mass. July 8, 2019).

In *Grandberry*, the borrower "executed an Affidavit of Clarification of Title … pursuant to *M.G.L.* c. 183, § 5B, in which she asserted that Deutsche Bank [the mortgagee] was not the holder of the Mortgage or the Note." *Grandberry*, at 68.  Despite recording an affidavit, she could not present any evidence to support her assertion or provide any evidence to contradict

Deutsche Bank's motion for summary judgment that it owned the note and mortgage. *Id.* at 69. The *Grandberry* court granted summary judgment in Deutsche Bank's favor, declared that Deutsche Bank was entitled to foreclose on the secured property, and ordered that Grandberry's affidavit be stricken from the land records. *Id.* at 70.[9]

Similarly, Judge Casper allowed summary judgment to Deutsche Bank on its claim of slander of title where the mortgagor had recorded a "Notification of Rescission" and "Affidavit of Lawful Ownership" claiming that the subject mortgage was invalid and Deutsche Bank lacked standing to foreclose. *Deutsche Bank Nat'l Trust Co. v. Germinara,* No. 18-CV-12387-DJC, 2020 WL 30390, at *2 (D. Mass. Jan. 2, 2020). After Deutsche Bank provided copies of the subject note, mortgage, and assignments to Deutsche Bank, the court granted summary judgment to Deutsche Bank on its count seeking declaratory judgment as to its right to foreclose. *Id.* at *2-3. Moreover, the court found that the mortgagor's statements in the recorded affidavits were false and malicious in that they were motivated to impede a lawful foreclosure of the subject mortgage. *Id.* at *3-4. The court ordered the affidavits stricken from the land records. *Id.*[10]

---

[9] The *Grandberry* court denied summary judgment as to Deutsche Bank's quiet title action, holding that a mortgagee cannot quiet title as to the mortgagor prior to foreclosure. *Id.* at 67; *see also Deutsche Bank Nat'l Trust Co. v. Grandberry*, 374 F. Supp. 3d 166, 170 n.1 (D. Mass. Apr. 12, 2019). This consideration does not hinder the court from entering judgment in the present action, where U.S. Bank as Trustee already foreclosed on the Property.

[10] The *Germinara* court initially denied summary judgment on the quiet title action because there was an "ongoing debate" in Massachusetts courts regarding whether actual possession as well as legal title was required to prevail on a quiet title action. *Id.* at *3. However, on a motion for reconsideration, the *Germinara* court entered judgment in Deutsche Bank's favor on all three counts, including the request to strike the affidavit from the land records, as follows:

> Having given further consideration to the matter and considering the limits that Deutsche Bank now seeks as to Count I, [i.e. striking the affidavit from the land records only], having considered the Court's authority to grant equitable and declaratory relief, and that the relief that Deutsche Bank seeks is consistent with the Court's ruling as to Counts II and III, the Court ALLOWS Plaintiff's motion to

Likewise, the Massachusetts Land Court stated that an affidavit containing a defaulted borrower's assertions that a mortgage was not enforceable was not a proper use of an affidavit under ch. 183, § 5B and struck the affidavit from the land records. *The Bank of New York Mellon v. Gurinian*, 19 MISC 000122, 2020 WL 3105025, at *7 (Mass. Land Ct. June 11, 2020) ("If Defendants had a legitimate concern that the First Mortgage might be obsolete, they could have chosen to seek a judicial determination. Instead, they unilaterally recorded an improper affidavit.").

Also, on August 28, 2019, the Massachusetts Superior Court entered summary judgment and struck a similar affidavit from the appropriate registry of deeds. *See U.S. Bank Nat'l Ass'n v. Fillion*, No. 1877-CV-00435 (Aug. 28, 2019), slip op. attached as **Appendix 1**. There, the mortgagor, Fillion, recorded an affidavit in 2017 that asserted that the entity seeking to foreclose, U.S. Bank National Association as Trustee, was not the holder of the note or mortgage. *Id.* at *3. However, based on the evidence submitted to the Court with the motion for summary judgment, the Court found "no dispute that U.S. Bank [as trustee] is the owner of both the note and the mortgage pertaining to the Property." *Id.* The Court held that the mortgagor's affidavit was not filed for the purposes stated in *Mass. Gen. Laws* ch. 183, § 5B: "It is clear to the court that Fillion did not file the 2017 Affidavit to clarify the chain of title relative to the Property; rather he filed the 2017 Affidavit with the registry of deeds to muddy the waters and prevent US Bank

---

reconsider to the following extent: the Court now enters summary judgment as to Count I to Plaintiff Deutsche Bank to the extent that it seeks to strike Mr. Germinara's notice of rescission, … and affidavit of lawful ownership, … from the records of the Southern Essex District Registry of Deeds given the falsity of these statements as the Court previously found as a matter of undisputed fact.

*See* Text Order, ECF No. 40 (Feb. 27, 2020) (citations to the record omitted).

from selling the Property." *Id.* The Court granted summary judgment to the extent that it sought a declaration that the mortgagor's affidavit was void. *Id.*

In short, Torres is trying to follow a foreclosure delay tactic that has been repeatedly rejected in Massachusetts.

The Rhode Island Supreme Court also previously condemned the act of recording a document to thwart future transfers of a property. In *Industrial National Bank of Rhode Island v. Searles*, after would-be purchasers Mr. and Mrs. Searles could not timely complete the purchase of real estate, the seller entered into an agreement with another purchaser. *Indus. Nat'l Bank of R. I. v. Searles*, 442 A.2d 436, 438 (R.I. 1982). Mr. Searles then recorded the expired purchase and sale agreement in the land records, without notifying the seller, knowing and intending that recording the purchase and sales agreement would prevent the seller from selling the property to anyone else. *Id.* The seller, Industrial National Bank of Rhode Island, commenced a suit seeking damages for disparagement of title, a declaration that the seller owned the land free of encumbrances, and an injunction requiring Mr. and Mrs. Searles to remove the agreement from the land records. *Id.* After a hearing, the trial justice granted a preliminary injunction requiring Mr. and Mrs. Searles to provide a release of the agreement suitable for recording and dismissed the Searleses' counterclaim seeking performance of the now-expired agreement. *Id.* The Supreme Court upheld the injunction, holding that the seller's right to remove the cloud on title was clear.

> [Mr. Searles] recorded the sale agreement in question for the sole purpose of creating a cloud on the title and making the sale of the property to anyone else impossible. It would be difficult to envision a clearer case of right on the part of the petitioner seeking mandatory injunctive relief than in the case before us. Mr. Searles's recording of the agreement after he was unable to get financing was a blatant misuse of the recording statutes. On the evidence in this record, the recording of the agreement preventing Industrial from selling the property was a

proper subject for mandatory preliminary injunctive relief. The trial justice was correct in granting the preliminary injunction.

*Searles*, 442 A.2d at 439.

The same result should apply here. Mr. Torres' recording of the Notice of Defects was a blatant misuse of the recording statutes. Indeed, the Notice of Defects does not fall within any of the categories of documents permitted to be recorded. *See R.I. Gen. Laws* § 34-13-1. Without Mr. Torres ever filing an action in court,[11] the Notice of Defects cannot be considered a *lis pendens*. The Notice of Defects is another clear case of a document, like an expired purchase and sale agreement, that should be stricken from the Land Records.

Therefore, U.S. Bank as Trustee requests an order from the Court declaring the Notice of Defects to be false, void, of no effect on the title to the Property, and stricken from the Land Records.

## III.   **THE PRIOR NOTICE OF INEFFECTIVE FORECLOSURE DOES NOT AFFECT THIS ACTION.**

In his Affirmative Defense E, Torres also argues that this action "is barred by estoppel" because Plaintiff's prior foreclosure counsel "recorded an Affidavit of Ineffective Foreclosure on June 9, 2018, which indicated that a previous foreclosure was not valid for the reasons stated therein." Answer at p. 6 ¶ E. However, this allegation does not create any reason not to grant a declaratory judgment in U.S. Bank as Trustee's favor that the June 5, 2019 foreclosure sale was valid.

According to the Affidavit of Ineffective Foreclosure, attached as Exhibit 7 to the Answer, Plaintiff, through its foreclosure counsel at Marinosci Law Group, P.C. ("Marinosci"), held a foreclosure sale on January 6, 2012. Marinosci mailed a "Notice of Intent to Foreclosure

---

[11] Even if he were to file an action now, the Notice of Defects would not comply with § 9-4-9, which requires an action to be filed in Superior Court within 7 days.

Mortgage" on May 9, 2011, listing the holder of the mortgage as "US Bank National Association as Trustee for RASC 2005-EMX1" at a time when the mortgagee of records was still "Mortgage Electronic Registration Systems, Inc. as nominee for Mortgage Lenders Network USA, DBA Lenders Network" ("MERS"). *Id.* at ¶ 6. The Affidavit of Ineffective Foreclosure states that notices of the sale were sent on November 16, 2011, that a foreclosure sale occurred on January 6, 2012, and that a foreclosure deed was recorded on May 30, 2012. *Id.* at ¶¶ 4, 7. It is likely that the "Notice of Intent to Foreclosure Mortgage" sent on May 9, 2011 was the notice required by *R.I. Gen. Laws* § 34-27-3.1. *Id.* at ¶¶ 6-7. The Affidavit of Ineffective Foreclosure states that because the "Notice of Intent" was defective (presumably because it named MERS instead of U.S. Bank as Trustee) the foreclosure sale that occurred on January 6, 2012 and a foreclosure deed recorded on May 30, 2012 were void and of no force and effect.

Regardless, an admission that a prior foreclosure was invalid does not affect the court's ability to enter a declaratory judgment that the June 5, 2019 foreclosure was effective and that U.S. Bank as Trustee is now the owner of the Property.

## CONCLUSION

U.S. Bank as Trustee conducted a valid foreclosure sale of the Property on June 5, 2019, in strict compliance with the terms of the Mortgage and of *R.I. Gen Laws* §§ 34-27-3.1 and 34-27-4. None of the issues in the Notice of Defect or Torres' Affirmative Defenses has any merit.

WHEREFORE, Plaintiff respectfully requests summary judgment to enter in its favor, along with an order declaring that U.S. Bank as Trustee is the owner of the Property, free and clear of any claims of Torres, and that the Notice of Defects is void, of no effect on title, and should be stricken from the Land Records.

83607820v.3

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-EMX1

By its Attorneys,

*/s/ Jeffrey C. Ankrom*
Jeffrey C. Ankrom, Esq. (#7663)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)
jeffrey.ankrom@lockelord.com

Dated:  December 11, 2020

## CERTIFICATION OF SERVICE

I, the undersigned, hereby certify that on the 11th day of December, 2020, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be mailed to those indicated as non-registered participants.

*/s/ Jeffrey C. Ankrom*
Jeffrey C. Ankrom, Esq.

34