IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| U.S. BANK NATIONAL ASSN, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORP., HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2005-EMX1,<br>　　　　　　　Plaintiff<br><br>　　　v.<br><br>ARIEL TORRES,<br>　　　　　　　Defendant | No. 1:20-cv-00227-MSM-LDA |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

　　On November 27, 2004, the defendant, Ariel Torres, executed a mortgage securing a loan for $199,920, which enabled him to purchase residential property in Rhode Island. The mortgage named the Mortgage Electronic Registration System ("MERS") as nominee for Mortgage Lenders Network, USA, Inc. Subsequently, however, MERS assigned the mortgage to the plaintiff, U.S. Bank, National Association ("USBNA"), which recorded it on August 2, 2011.

　　It is not contested that Mr. Torres failed to make the payment due on November 1, 2010 and has not made any payments since that time. As a result, the

1

mortgage fell into default. On May 8, 2018, nearly eight years later, the then-Servicer, Wells Fargo Home Mortgage ("Wells Fargo") sent a Notice of Default.[1] The default was not cured and ultimately an agent for the holder of the mortgage sent both a "Notice of Counseling" and "Notice of Intent to Foreclose." The latter announced a foreclosure sale on June 5, 2019. On that day, Mr. Torres recorded a document entitled "Notice of Defects" alleging various defects with the process undertaken to that date and asserting that any foreclosure sale was invalid.

Nonetheless, the sale was held, and the property was conveyed to USBNA by recorded deed dated July 1, 2019.

USBNA brought this action to achieve two purposes. First, contending that the "Notice of Defects" constitutes a cloud on its title, it seeks to quiet that title by an Order from this Court striking the "Notice of Defects." (ECF No. 1, count I). Second, it seeks declaratory relief "that the foreclosure sale of the Property on June 5, 2019, was a lawful and proper exercise of the power of sale and that it holds title to the Property free and clear from any claim by Mr. Torres." (ECF No. 1, count II). Jurisdiction is based on diversity. 28 U.S.C. § 1332.

USBNA has moved for summary judgment with respect to both claims. Fed. R. Civ. P. 56. After consideration of the arguments and memoranda of the parties, the Court determines there is no genuine issue of material fact and that USBNA is entitled to judgment as a matter of law. Therefore, summary judgment is GRANTED,

---

[1] A previous attempt to foreclose was invalid. (ECF No. 20, ¶ 21,22; ECF 13-3, ¶ 22).

the Court declares the foreclosure sale valid, and it ORDERS the Notice of Defects stricken. (ECF No. 13).

## I. SUMMARY JUDGMENT STANDARD

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.*, 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact. *Id.* at 49. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because

the opponent is unlikely to prevail at trial. If the evidence presented 'is subject to conflicting interpretations, or reasonable [people] might differ as to its significance, summary judgment is improper.'" *Gannon v. Narragansett Elec. Co.*, 777 F. Supp. 167, 169 (D.R.I. 1991) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure,* § 2725, at 106-09 (1983)).

## II.  ANALYSIS

While the Notice of Defects (ECF No. 1-6) contained numerous allegations of faulty process, Mr. Torres presses three main contentions in opposition to declaratory summary judgment.

### A.  Authority of Foreclosing Entity

Mr. Torres attempts to create a genuine issue of material fact by challenging the assertion that USBNA is the proper entity to initiate foreclosure.  Coupled with this, he asserts that the trust in whose benefit USBNA purports to act is not in fact the correct trust.  He does not contest that the mortgage was assigned to USBNA and, indeed, such a contention would not get very far.  *See Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2015) (mortgagor may not challenge assignment for any reasons that would make it merely voidable instead of void).

Instead, he points to two letters, part of the record in this case, both of which were sent by Wells Fargo acting as servicer.  The first letter, dated Sept. 9, 2019, in response to inquiries, enclosed several documents:

> Security instrument and Assignments, if applicable
> Promissory Note and any applicable riders
> Loan Information Report

4

> The recently received correspondence that initiated the request Transaction History

(ECF No. 18-4, p. 3). The letter concluded that it could not be more specific because the inquiries were too broad, but the enclosed Loan Information Report included the following notation: "Owner/Assignee RAMP 2004-KR2." *Id.* at p. 7.

The second letter dated March 6, 2020, asserts that in response to what must have been a subsequent inquiry Wells Fargo was researching the account, but its research was expected not to be concluded until March 20, 2020. (ECF No. 20-1). As part of the update, however, that letter contained a recitation that the account was assigned to RAMP 2004-KR2, and that RAMP 2004-KR2 could be contacted through The Bank of New York Mellon Trust Company, N.A. (ECF Nos. 20-1, 18-3, p.3).

These letters are the backbone of Mr. Torres' allegation that USBNA is not an authorized entity to institute foreclosure proceedings. The implication is that New York Mellon, acting in the interests of RAMP 2004-KR2, may be but, in any event, Mr. Torres maintains that a genuine dispute of this material fact exists.

USBNA makes two substantive responses. First, it notes that Mr. Torres does not challenge the existence of the entity USBNA but only the existence, or correct identification, of the Trust. Instead of "Residential Asset Securities Corp. 2005 EMX1," Mr. Torres suggests, as do the letters, that the Trust may be "RAMP 2004-KR2." Any discrepancy in the name of the Trust, however, is of no assistance to Mr. Torres. It is the *trustee* who holds the interest, not the *trust, Lux v. Lux*, 288 A.2d 701, 704 (R.I. 1972), and there is no dispute that the trustee -- USBNA -- is a valid entity. Thus, while there may be a dispute about the correct description of the Trust,

5

it is not material to whether USBNA had the authority to foreclose.  Second, Rhode Island statutory law provides that an error in the description of the trust does not adversely affect the right to dispose of real estate.

> The word "trustee" or the words "as trustee" or words of similar meaning, following name of the grantee of real estate or any interest therein conveyed, transferred or assigned by an instrument duly executed and recorded, wherein the instrument fails to set forth the terms of the trust . . .  shall not affect the right of such grantee to sell or otherwise dispose of the real estate or interest therein in the same manner as if the word "trustee" or the words "as the trustee" had not been used in the instrument . . . .

R.I.G.L. § 34-11-37 (2012).  This statute, too, renders the dispute immaterial.  *See Bucci v. Lehman Bros. Bank*, 68 A.3d 1069, 1089 (R.I. 2013) (holder or its agent can foreclose even if it does not hold the note under the correct name).  *Cf. Pinto v. HSBC Bank, N.A.,* No. CIV.A. 12-11332-LTS, 2012 WL 6622493, at *1 (D. Mass. Dec. 18, 2012) (Magistrate Order), *app dism.* (1st Cir. 13-1099 Mar. 27, 2013) (mistake in name in instrument of conveyance did not invalidate foreclosure).  A misstatement, as in the letter of March 6, 2020, as to a contact address is of even less consequence and does not put into evidence a genuine dispute as to the holder of the mortgage or the entity entitled to foreclose.

Even if the letters evinced a genuine dispute, it would be about the identity of the holder of the *note*.  USBNA asserts its authority to foreclose as the holder of the *mortgage,* and under Rhode Island law an entity who holds the mortgage need not also own the note.  *Ocwen Loan Servicing, LLC v. Medina*, 247 A.3d 140, 144-45 (R.I. 2021).  The foreclosing entity need not hold both.  *Sophin In v. Mortg. Elec.*

*Registration Sys., Inc.*, C.A. No. 11-330, 2015 WL 105775, at *2 (D.R.I. Jan. 7, 2015) (mortgagee need not hold the note to foreclose). *Accord Era v. Morton Cmty. Bank*, 8 F. Supp. 3d 66, 74 (D.R.I. 2014) (authority to foreclose came from assignment of mortgage); *see also Bucci*, 68 A.3d at 1087 (mortgagee deemed by law to be acting as an agent for the holder of the note).

USBNA has produced affirmative evidence of the recorded assignment to it of the mortgage. The defendant has countered with no evidence of any further assignment or other transfer which would deprive USBNA of its status as mortgagee. USBNA has met its burden with respect to summary judgment as to this argument.

### B. Adequacy of Notice of Default

Mr. Torres maintains that the Notice of Default ("Default Notice") was inadequate and therefore rendered the sale invalid. The timing and contents of the Default Notice are governed by the terms of ¶¶ 15 and 22 of the mortgage. While strict compliance with those terms is required, *Woel v. Christiana Trust*, 228 A.3d 339, 345-46 (R.I. 2020), USBNA's Default Notice complied with the mandates of the mortgage: (a) It was mailed by first-class mail, (b) it specified the default, (c) it described the action required to cure the default, (d) it set a date (e) that was not less than thirty (30) days away, (f) it warned that failure to cure could result in acceleration, and (g) it advised of both the right to reinstate and to bring a court action. Mr. Torres disputes only one of these items. He maintains that because the Default Notice also advised that fees beyond the principal and interest were owed, it failed to satisfy (b). The Notice advised of the following:

7

> "To cure the default you must pay the total delinquency against your account, which as of today's date is:
>
> | | |
> |---|---:|
> | Past Due Payments | $159,433.99 |
> | Late Charge Balance | $1,411.08 |
> | Other Fees | $8,652.23 |
> | Total Delinquency as of May 8, 2018 | $169,497.30" |

(ECF No. 1-4). There is no dispute between the parties as to what the Notice of Default set forth. In the Court's view, the amount of default was clearly stated as $159,433.99. The fact that additional amounts required for reinstatement might be owed did not diminish or contradict that the amount of the default was specified.

Mr. Torres also complains that USBNA failed to send a separate Notice of Acceleration, and he asserts that such is required under *Woel*. Implicit in his argument is that the Default Notice, by including the amount required for reinstatement, was in practical respects an acceleration that occurred too soon. The holding of *Woel*, however, is limited to finding a Default Notice invalid because it failed to explicitly include a "right to reinstate." 228 A.3d at 346. *Woel* spoke of the mortgagee's right to accelerate after all preconditions were met, but nothing in the opinion suggests that a separate Notice of Acceleration was one of those preconditions. Indeed, ¶ 22 explicitly permits acceleration to occur "without further demand," so long as the Notice of Default is compliant. The paragraph missing in *Woel*, advising of the right to reinstate, was included in this Notice, which clearly advised, "[y]ou have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration . . . ." (ECF No. 1-3). This argument objecting to summary judgment is without merit.

C. "Notice of Counseling"

On December 3, 2018, USBNA mailed a "Notice of Availability of Mortgage Counseling" ("Counseling Notice") pursuant to Rhode Island General Law § 34-27-3.1 (2009) (repealed 2014). Mr. Torres faults that notice because it was mailed by certified mail, not ordinary first-class mail. There is no dispute that an attempt was made by the post office to deliver the Notice to Mr. Torres' address, but no one was home. Subsequently, because of his failure to pick the Notice up at the post office, it was returned to the sender as "unclaimed." Mr. Torres, as a result, argues that he was not given a Counseling Notice at all. His argument is made by stringing together several different components to create a logical chain. The first component is his assertion that pursuant to § 34-27-3.1, he was entitled to a Counseling Notice.[2] The second piece is the requirement of ¶ 15 of the mortgage that all notices are deemed given to the borrower "when mailed by first class mail or when actually delivered to borrower's notice address if sent by other means." To meet this requirement, the Bank would have to show either that the Notice was sent by "first class mail" or that it was received. Since it is undisputed that the Notice was not actually received, the third component of the argument is that certified mail is not "[ordinary] first class

---

[2] Section 3.1 was repealed in 2014. Mr. Torres makes a complicated argument, however, that it was revived in 2018; the argument revolves around a sunset provision attached to R.I.G.L. § 34-27-3.2, a mortgage mediation statute enacted in 2014. In a recent case, the Rhode Island Supreme Court declined to address whether § 3.1 still has life in the context of a statutory right of sale. *Ocwen Loan Servicing, LLC v. Medina,* 247 A.3d 140, 143-44, n. 6, 7 (R.I. 2021). Because of the conclusion that, for purposes of ¶ 22 of the Mortgage at issue here "certified mail" is a type of "first class mail," and that therefore notice of counseling was properly provided, we also need not reach the question of § 3.1's continuing vitality.

mail." Here is the argument in short form:

1. Entitlement to Counseling Notice
2. Notice must be by first-class mail or actually received
3. Since it was not actually received, must be by first-class mail
4. Certified mail is not first-class mail
5. Therefore, notice was not "given" under terms of the Mortgage.

There is little in Rhode Island law to support the argument that "first class mail" does not include certified mail. It is correct that the Rhode Island Supreme Court, in the context of an insurance notice, did remark that certified mail "increased the risk of nondelivery", whereas first class mail carries a presumption of delivery. *Larocque v. Rhode Island Joint Reinsurance Ass'n*, 536 A.2d 529, 532 (R.I. 1988). But noting that pragmatic difference is a far cry from holding that certified mail is not a kind of first-class mail. Indeed, the United States Postal Service describes first class mail as a *type* of mail, while certification is described simply as an "extra *service*" for which "First-Class mail" is eligible. *What Domestic Mail Extra Services are Available?* USPS (Aug. 13, 2021) (emphasis added), https://faq.usps.com/s/article/What-Domestic-Mail-Extra-Services-are-Available). The language of ¶ 15 is standard, and the question of whether certified mail is first-class mail is not unique to this case.[3] *MTGLQ Investors, L.P. v. Davis*, 270 So.3d 392, 394 (2019), *rev. den.* 2019 WL 4127348, at *1 (Fla. Aug. 30, 2019) (pre-suit notice sent by certified mail satisfied requirement to mail by first-class mail). *Accord, Ocwen Loan Serv., LLC v. Malish,* 109 N.E.3d 659, 668 (Ohio. App. 2018) (certified mail is first-class mail);

---

[3] There is not unanimity on this point. *E.g.*, *Aurora Loan Services, LLC v. Condron*, 186 A.2d 708, 727 (Conn. App. 2018) (where notice of mortgage default was sent by certified mail, that constituted "sent by other means," not sent by first-class mail).

*Maryland State Bd. Of Nursing v. Sesay*, 121 A.3d 140, 145 at n.3 (Md. App. 2015) (certified mail is an extra service added to first-class mail); *Ming Kuo Yang v. City of Wyoming, MI,* 31 F. Supp. 3d 925, at 932, n.6 (W.D. Mich. 2014), *aff'd,* 793 F.3d 599 (6th Cir. 2015) (certified mail is an extra service option combined with first-class mail).

There is no factual dispute here. The parties agree the Counseling Notice was sent by certified mail, that it was not picked up, and that it was returned to its sender. The controlling issue is one of law, not fact. Therefore, USBNA is entitled to summary judgment with respect to this argument.

### D. Notice of Defects

Finally, USBNA has asked the Court to strike the "Notice of Defects" Mr. Torres recorded. Mr. Torres claims that the Notice was valid as a statement of "intention to file a lawsuit." But Rhode Island has a statute governing the filing of a *lis pendens,* which is intended to put prospective purchasers on notice that there may be a claim against real estate. *Lis Pendens*, R.I.G.L. § 9-4-9 (1988) Specifically, it provides that "[n]o proceeding in court . . . shall affect the title (except as to parties thereto . . . and those having actual notice thereof) as to any rights acquired before notice of the filing, or entry of the notice shall be recorded . . . ." *Id.* Presumably, the Notice of Defects was intended to provide such notice. But § 9-4-9(b) anticipates that a lawsuit will be filed, and there was no such lawsuit filed in this case.

Mr. Torres' objection to summary judgment does not address the Notice of Defects, and any arguments he may have made in support of his objection to striking

it are therefore waived.  In addition, it appears that the Notice is ineffective in any event, and the Court therefore grants summary judgment on count I of the Complaint and ORDERS the Notice stricken.

For the reasons outlined above, the defendant's Motion for Summary Judgment on count II (ECF No. 13) is also GRANTED.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge

September 13, 2021